UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| BOARD OF TRUSTEES OF THE PACIFIC COAST ROOFERS PENSION PLAN, et al., Plaintiffs, v. FRYER ROOFING CO., INC., Defendant. | Case No. 16-CV-02798-LHK **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES** Re: Dkt. No. 54 |
|---|---|

Plaintiffs Board of Trustees of the Pacific Coast Roofers Pension Plan ("Board") and Pacific Coast Roofers Pension Plan ("Plan") (collectively, "Plaintiffs") move for default judgment against Defendant Fryer Roofing Co., Inc. ("Defendant"). Having considered Plaintiffs' motion, the relevant law, and the record in this case, the Court hereby GRANTS Plaintiffs' motion, but DENIES without prejudice Plaintiffs' request for $30,784.00 in attorney's fees.

## I. BACKGROUND

### A. Factual Background

Plaintiffs bring this cause of action against Defendant for withdrawal liability payments pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the

1
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001–1461. Plaintiff Plan is an "employee benefit plan" as defined by ERISA, § 3(3), 29 U.S.C. § 1002(3), an "employee benefit pension plan" as defined in ERISA § 3(2), 29 U.S.C. § 1002(2), and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37), 1301(a)(3). ECF No. 1 ("Compl.") ¶ 5. The Plan is "jointly administered and is maintained pursuant to the Labor Management Relations Act Section 302(c) (29 U.S.C. § 186(c))." *Id.* Plaintiff Board "is a named fiduciary of the Plan" and "is authorized to bring suit and collect monies for the Plan." *Id.* ¶ 6.

Defendant is a California corporation and "was a contributing employer in the Plan pursuant to" a collective bargaining agreement (the "Bargaining Agreement") with the Roofers & Waterproofers Local 27 ("Union"). *Id.* ¶¶ 1, 23. The Union is "a labor organization as defined in NLRA § 2(5) (29 U.S.C. § 152(5)) that represents employees in an industry affecting interstate commerce." *Id.* ¶ 23. Defendant "was obligated to and did make contributions to the Plan on behalf of its employees that were covered under the Bargaining Agreement." *Id.*

Plaintiffs allege that on or about May 1, 2014, Defendant "effected a complete withdrawal . . . from participation in the Plan." *Id*. ¶ 24. Plaintiffs state that as a result of that withdrawal, Defendant became subject to withdrawal liability under ERISA § 4203, 29 U.S.C. § 1383. *Id.* Thus, on August 6, 2015, Plaintiffs sent a letter to Defendant's counsel "advising that withdrawal liability in the approximate amount of $2,300,000.00 would be assessed within 30 days unless [Defendant] paid all delinquent amounts owed to the Plan and became reinstated with the Plan as a contributing employer." *Id.* ¶ 25. Defendant did not make any payments and did not become reinstated with the Plan. *Id.*

Subsequently, by letter dated October 30, 2015, Plaintiffs notified Defendant and each member of Defendant's controlled group of the $2,399,038.00 withdrawal liability assessed against them, and demanded payment. *Id.* ¶ 27. Plaintiffs' letter also specifically named another entity, Rosie the Roofer, LLC ("Rosie"), as a "successor employer," and notified Rosie that it was

2
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

jointly and severally liable for the assessed withdrawal liability. *Id.* Plaintiffs' letter stated that:

> (a) [Defendant's] assessed liability for the withdrawal was $2,399,038.00, payable either in one lump sum before December 1, 2015, or in 70 quarterly installment payments (due on the first day of each calendar quarter) of $57,117.00 each beginning December 1, 2015, with a final 71st payment of $42,218.00 due on July 1, 2033.
> (b) Any request for review by [Defendant] must be made within ninety (90) days from receiving the notice of the withdrawal liability assessment; and
> (c) Any request for review or initiation of arbitration does not postpone the deadline for making payment according to the schedule set forth in the notice of the withdrawal liability assessment.

*Id.* Thus, Plaintiffs' letter "clearly required [Defendant] to begin making quarterly payments of $57,117.00 on December 1, 2015." *Id.* ¶ 28.

Then, on December 18, 2015, the Plan's legal counsel sent a letter to Defendant and Rosie "stating that the first monthly withdrawal liability payment, which was due December 1, 2015, had not been received by the Plan." *Id.* ¶ 29. The December 18, 2015 letter also stated "that if payment in full, including interest, was not made within 60 days," "the Plan would declare each member of the control group in default, and require immediate payment of the entire outstanding assessed withdrawal liability, plus interest and liquidated damages on the full amount." *Id.* Plaintiffs allege that Defendant "failed to cure its delinquent installment payment within sixty (60) days" after "being notified that it was delinquent in making the required withdrawal liability installment" by the December 18, 2015 letter. *Id.* ¶ 30. Neither Defendant nor Rosie has made any withdrawal liability payments to Plaintiffs. *Id.* ¶ 38.

However, in a letter dated January 26, 2016, Defendant requested a review of the withdrawal liability assessment. *Id.* ¶ 31. On or about May 20, 2016, the Plan's counsel responded to Defendant's request for review and explained that the issues that Defendant raised did not warrant an adjustment to the withdrawal liability assessment amount." ECF No. 55 ¶ 5. This response also notified Defendant of its right to initiate arbitration to resolve any disputes regarding the withdrawal liability assessment amount. *Id.* However, Defendant did not initiate arbitration. *Id.* ¶ 6.

### B. Procedural History

Plaintiffs filed a complaint against Defendant and Rosie on May 24, 2016. Compl. Plaintiffs' complaint asserts a cause of action for withdrawal liability payments against Defendant, as well as a cause of action for withdrawal liability payments against Rosie as Defendant's successor. *Id.* at 9–10. Plaintiffs' complaint further asserts a cause of action against Rosie for failure to pay contributions to Plaintiffs in violation of the Bargaining Agreement. *Id.* at 8.

On August 2, 2016, Rosie answered Plaintiffs' complaint. ECF No. 20. On November 21, 2016, a notice was filed stating that Defendant had filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of California. ECF No. 32. This bankruptcy action was closed on or about January 5, 2017. ECF No. 55 ¶ 11. Plaintiffs received no distribution from Defendant's bankruptcy. *Id.*; *see* ECF No. 55-1 at 9 (Bankruptcy Court's December 3, 2016 "Notice of Filing Report of Distribution").

On June 23, 2017, Plaintiffs and Rosie filed a stipulation stating that Plaintiffs and Rosie had reached a settlement. ECF No. 46. Plaintiffs and Rosie stipulated to a voluntary dismissal of Plaintiffs' action without prejudice as to Rosie only, and requested "that the Court retain jurisdiction over the Action for purposes of enforcing the settlement" between Plaintiffs and Rosie. *Id.* at 2. The Court granted Plaintiffs and Rosie's stipulation on June 26, 2017. ECF No. 47.

On July 17, 2017, Plaintiffs filed a motion for entry of default by the Clerk as to Defendant. ECF No. 50. On July 18, 2017, the Clerk entered default against Defendant. ECF No. 52. Then, on September 15, 2017, Plaintiffs filed the instant motion for default judgment against Defendant. ECF No. 54 ("Mot."). Plaintiffs also filed two declarations in support of their motion for default judgment. ECF No. 55 & 56.

On December 19, 2017, the Court requested Plaintiffs' counsel to submit billing records and a bill of costs. ECF No. 61. On December 20, 2017, Plaintiffs' counsel filed a declaration with billing records and a bill of costs. ECF No. 62.

## II.  LEGAL STANDARD

4

Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III. DISCUSSION

#### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Court thus begins by

5
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

evaluating subject matter jurisdiction and personal jurisdiction.

### 1. Subject Matter Jurisdiction

The Court finds that the exercise of subject matter jurisdiction over this case is proper. "[A] federal court may exercise federal-question jurisdiction if a federal right or immunity is an element, and an essential one, of the plaintiff's cause of action." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citation omitted); *see also* 28 U.S.C. § 1331. Plaintiffs' complaint asserts one cause of action against Defendant for withdrawal liability payments pursuant to ERISA, 29 U.S.C. §§ 1001–1461. The Court has subject-matter jurisdiction over this federal claim. *See* 28 U.S.C. § 1331(a).

### 2. Personal Jurisdiction

"With respect to personal jurisdiction, fiduciaries may bring an ERISA enforcement action in the federal district court of any district 'where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.'" *Pension Plan for Pension Tr. Fund for Operating Eng'rs v. Constr. Materials Testing, Inc.*, 2017 WL 5514293, at *3 (N.D. Cal. Oct. 25, 2017) (quoting 29 U.S.C. § 1132(e)(2)). Thus, a court is permitted to "exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits." *Id.* In the instant case, Plaintiffs allege that the Plan maintains its principal place of business in San Jose, California. Compl. ¶ 12. As a result, the Court concludes that it has personal jurisdiction over Defendant.

### B. Adequacy of Service of Process

As another preliminary matter, "where entry of default judgment is requested, the Court must determine whether service of process was adequate." *Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20, 2012). Federal Rule of Civil Procedure 4(h)(1)(B) allows a party to serve a corporation in the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent,

or any other agent authorized by appointment or by law to receive service of process." Plaintiffs have submitted a record from the California Secretary of State's online database listing David Fryer as Defendant's "Agent for Service of Process" and 4647 E. Weathermaker Ave., Suite 102, Fresno, CA 93703 as David Fryer's address. ECF No. 55 ¶ 8; ECF No. 55-1 at 8. On June 14, 2016, Plaintiffs' registered process server personally delivered a copy of the summons and complaint to David Fryer at 4647 E. Weathermaker Ave., Suite 102, Fresno, CA 93703. ECF No. 14. As a result, the Court finds that service of process was adequately performed on Defendant.

### C. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendant is appropriate and that service of process on Defendant was adequate, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Defendant is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. Absent a default judgment, Plaintiffs in this case will have no means to recover the withdrawal liability payments that Defendant owes to Plaintiffs. Thus, the first factor weighs in favor of granting default judgment.

#### 2. Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' cause of action against Defendant as pleaded in Plaintiffs' complaint. These two factors are often analyzed together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiffs' cause of

7
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

action against Defendant and the sufficiency of Plaintiffs' complaint together.

Under ERISA, an employer that withdraws from a multiemployer plan is "liable to the plan in the amount determined [] to be the withdrawal liability." 29 U.S.C. § 1381(a). Here, Plaintiffs allege that the Plan is a multiemployer plan as defined by 29 U.S.C. §§ 1002(37), 1301(a)(3). Compl. ¶ 5. Plaintiffs further allege that Defendant "was a contributing employer in the Plan" and thus "was obligated to and did make contributions to the Plan on behalf of [Defendant's] employees." *Id.* ¶ 23. Plaintiffs also allege that on or about May 1, 2014, Defendant "effected a complete withdrawal . . . from participation in the Plan." *Id.* ¶ 24. Finally, Plaintiffs allege that Defendant has not paid any portion of its assessed withdrawal liability. *See id.* ¶¶ 30, 38. Accordingly, based on the allegations in Plaintiffs' complaint, Defendant appears to be liable for the amount of the entire assessed withdrawal liability. Accordingly, the Court concludes that Plaintiffs have sufficiently stated their cause of action for withdrawal liability against Defendant.

### 3. Fourth *Eitel* Factor

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594-JSW, 2007 U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 WL 1545173 (N.D. Cal. May 29, 2007). "Although default judgment is discouraged when the money at stake is 'substantial or unreasonable,' default judgment may still be appropriate when 'the sum of money at stake is tailored to the specific misconduct of the defendant.'" *Constr. Materials Testing, Inc.*, 2017 WL 5514293, at *5 (quoting *Bd. of Trs. v. Core Concrete Constr., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012)).

Plaintiffs' motion for default judgment seeks to recover $2,399,038.00 in unpaid withdrawal liability, $311,644.08 in interest, $479,807.60 in liquidated damages, $30,784.00 in

8

Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

attorney's fees, and $1,304.83 in costs. Mot. at 14–17. Although substantial, these sums of actual and statutory damages are tailored to Defendant's "specific misconduct" of complete withdrawal from the Plan and other damages required under ERISA. *Id.*; *see* 29 U.S.C. § 1132(g)(2). In particular, Defendant's unpaid withdrawal liability was calculated according to 29 U.S.C. § 1391(b). *See* ECF No. 56-2 at 1 (letter from Plaintiffs' actuary, Segal Consulting, stating that "[t]he 'presumptive' method of allocation as described in the [MPPAA] . . . [was] used to determine [Defendant's] withdrawal liability"); *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 610 (1993) ("In this case, the Plan used the presumptive method of § 1391(b), which bases withdrawal liability on the proportion of total employer contributions to the plan made by the withdrawing employer during certain 5-year periods. In essence, the withdrawal liability imposes on the withdrawing employer a share of the unfunded vested liability proportional to the employer's share of contributions to the plan during the years of its participation."). Other courts in this district have found the fourth *Eitel* factor to weigh in favor of default judgment in the withdrawal liability context where similar sums of money were at stake. *See Constr. Materials Testing, Inc.*, 2017 WL 5514293, at *5 (finding that the plaintiffs' claimed withdrawal liability of $2,454,916.00 and interest of $638,278.42 were "neither gratuitous nor unreasonable" and were instead "tailored to [the defendant's] . . . complete withdrawal from the Plan."). Thus, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Defendant has not answered or otherwise responded to Plaintiffs' complaint. Defendant appeared once in this case when it (along with Rosie) filed a stipulation for a second extension of time to file an answer to Plaintiffs' complaint. *See* ECF No. 18. Defendant did not contest any of Plaintiffs' material facts in this stipulation. Despite the extension, Defendant never filed an answer to Plaintiffs' complaint. Further, Defendant has neither moved to set aside the Clerk's entry of default against Defendant nor opposed the instant motion for default judgment. As a

9
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

1 result, the Court finds that disputes of material facts are unlikely.

2 The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. A summons was issued for Defendant on May 25, 2016, ECF No. 7, and was returned executed on June 28, 2016, ECF No. 14. Nothing in the record before the Court indicates that the service as to Defendants was improper. Indeed, as stated above Defendant has appeared once in this case to file a stipulation for a second extension of time to file an answer to Plaintiffs' complaint. *See* ECF No. 18. In these circumstances, it appears that Defendant's default is not the result of excusable neglect.

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). As detailed above, although Defendant has appeared once, Defendant has failed to meaningfully participate in litigating this case. Specifically, Defendant has not answered or otherwise responded to Plaintiffs' complaint, nor has Defendant moved to set aside the Clerk's entry of default against Defendant or opposed the instant motion for default judgment. The likelihood of the case proceeding to a resolution on the merits is unlikely. Thus, the Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment. *Id.* at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment). The Court therefore finds that default judgment is appropriate in this case.

### D. Damages

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld*

10

Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

*Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Intern., Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

As discussed above, Plaintiffs request damages for (1) unpaid withdrawal liability; (2) interest on the unpaid withdrawal liability; (3) liquidated damages; and (4) attorneys' fees and costs. Plaintiffs are entitled to all of these types of damages under 29 U.S.C. §§ 1451(b) and 1132(g)(2). 29 U.S.C. § 1451(b) states that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [29 U.S.C. § 1145])." In turn, 29 U.S.C. § 1132(g)(2) sets forth the damages that a plan can recover in an action for delinquent contributions. Specifically, 29 U.S.C. § 1132(g)(2) states that in any action brought "by a fiduciary for or on behalf of a plan to enforce [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court *shall* award the plan":

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

As a result, Plaintiffs may recover these types of damages on their cause of action against Defendant for unpaid withdrawal liability.

In the instant case, Plaintiffs seek $2,399,038.00 in unpaid withdrawal liability, $311,644.08 in interest, $479,807.60 in liquidated damages, $30,784.00 in attorney's fees, and

11

Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

1    $1,304.83 in costs. Mot. at 14–17. The Court considers each in turn.

**(1) Withdrawal Liability**

ERISA sets forth a procedure for determining an employer's withdrawal liability. First, "[a]s soon as practicable after an employer's complete or partial withdrawal," the plan sponsor must compute the employer's withdrawal liability, notify the employer of the amount of the liability and the schedule for liability payments, and demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). Then, the employer is entitled, within 90 days of receiving such notice from the plan sponsor, to ask the sponsor to "review any specific matter relating to the determination of the employer's liability." *Id.* § 1399(b)(2)(A)(i). After a reasonable review of any matter raised by the employer, the plan sponsor must respond to the employer's request for review with an explanation of the plan sponsor's decision regarding the employer's request for review and the reason for any "change in the determination of the employer's liability." *Id.* § 1399(b)(2)(B). "Any dispute" between the employer and the plan sponsor about the plan sponsor's determination of the employer's withdrawal liability must be resolved through arbitration. *Id.* § 1401(a)(1). However, arbitration must be initiated within 60 days after the earlier of (1) the date that the plan sponsor responds to the employer's request for review; and (2) 120 days after the date of the employer's request for review. *Id.* If neither party initiates arbitration proceedings in time, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." *Id.* § 1401(b)(1). Finally, if the employer fails to make a payment according to the plan's sponsor's payment schedule, receives notice of such delinquency from the plan sponsor, and subsequently fails to cure the delinquency within 60 days of receiving notice of the delinquency, then the plan sponsor is entitled to obtain immediate payment of the entire withdrawal liability. *Id.* § 1399(c)(5).

In the instant case, after Defendant completely withdrew from the Plan on May 1, 2014, Compl. ¶ 24, Plaintiffs assessed Defendant's withdrawal liability to be $2,399,038.00 based on calculations done by Segal Consulting, Plaintiffs' actuary, in accordance with 29 U.S.C. §

1391(b). *Id.* ¶ 27; *see* ECF No. 56-2 at 1. Plaintiffs notified Defendant of the withdrawal liability in a letter dated October 30, 2015. Compl. ¶ 27; ECF No. 56-2 at 4–8. Although Defendant requested a review of the withdrawal liability assessment on January 26, 2016, Defendant never initiated arbitration. Compl. ¶ 31, ECF No. 55 ¶ 6. As a result, the $2,399,038.00 demanded by Plaintiffs became "due and owing on the schedule set forth by" Plaintiffs. *See* 29 U.S.C. § 1401(b)(1). Further, although the Plan's legal counsel sent a letter to Defendant on December 18, 2015 "stating that the first monthly withdrawal liability payment, which was due December 1, 2015, had not been received by the Plan," Defendant did not cure this delinquent installment payment within 60 days of receiving the notice of delinquency from the Plan. *Id.* ¶ 30. Indeed, Defendant has not made any withdrawal liability payments to the Plan. *Id.* ¶ 38. As a result, pursuant to 29 U.S.C. § 1399(c)(5), Plaintiffs are entitled to immediate payment of the entire withdrawal liability of $2,399,038.00. *See Constr. Materials Testing*, 2017 WL 5514293, at *6 (awarding the full sum of the plaintiff's assessed withdrawal liability where the defendant failed to initiate arbitration); *Pension Plan v. Yubacon*, 2014 WL 5280759, at *5 (N.D. Cal. Oct. 14, 2014) (same). Thus, the Court finds that Plaintiffs are entitled to $2,399,038.00 in withdrawal liability.

**(2) Interest**

Plaintiffs seek $311,644.08 in interest, calculated at a rate of 7.25% per year on $2,399,038.00 for the period from December 1, 2015 through September 15, 2017 (654 calendar days). Mot. at 14. The Court finds that Plaintiffs are entitled to $311,644.08 in interest because both the December 1, 2015 starting date and the 7.25% interest rate are correct.

First, with regards to the starting date, 29 U.S.C. § 1399(c) states that plan sponsors may seek unpaid withdrawal liability "plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." Here, Defendant's first unpaid installment was due on December 1, 2015. ECF No. 56 ¶ 8.

Second, with regards to the interest rate, interest on unpaid contributions must be calculated "by using the rate provided under the plan, or, if none, the rate prescribed under Section

13
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

6621 of Title 26." 29 U.S.C. § 1132(g)(2). In the instant case, pursuant to the Plan's withdrawal liability procedures, Plaintiffs are entitled to 7.25% per annum interest on unpaid contributions. ECF No. 56-2 at 25.

Accordingly, in addition the $2,399,038.00 in withdrawal liability, Defendant owes $173,930.26 in interest per year (7.25% of $2,399,038.00), which translates to $476.52 per day. Thus, over the period from December 1, 2015 to September 15, 2017, $311,644.08 ($476.52 per day for 654 days) in interest has accrued. As a result, the Court awards Plaintiffs $311,644.08 in interest.

### (3) Liquidated Damages

Under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to liquidated damages amounting to either 20% of the unpaid withdrawal liability or the total accrued interest on the unpaid withdrawal liability, whichever is "greater." As discussed above, the total interest on the unpaid withdrawal liability that was accrued from December 1, 2015 to September 15, 2017 was $311,644.08, while 20% of the unpaid withdrawal liability is $479,807.60. Thus, the Court finds that Plaintiffs are entitled to $479,807.60 in liquidated damages.

### (4) Attorney's Fees and Costs

As discussed above, under 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to "reasonable attorney's fees" from Defendant. Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in

14

Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiffs submitted a declaration and billing records from Plaintiffs' counsel Matthew Minser. ECF No. 62. The billing records submitted include hours worked by Minser and fellow attorneys Anne Bevington and Kimberly Hancock, as well as paralegals Julie Jellen and Elise Cotterill. From February 23, 2016 through August 31, 2016, the hourly rate billed by attorneys Minser, Bevington, and Hancock was $215.00 per hour, while the hourly rate billed by paralegals Jellen and Cotterill was $125.00 per hour. *Id.* at 2. Subsequently, from September 1, 2016 through September 7, 2017, the hourly rate billed by Minser, Bevington, and Hancock was $230.00 per hour, while the hourly rate billed by Jellen and Cotterill was $125.00 per hour. *Id.*

Other courts in this district have held that similar hourly rates for attorneys and paralegals in the ERISA withdrawal liability context were reasonable. *See Auto. Indus. Pension Tr. Fund v. Bi-City Paint & Body Co., Inc.*, 2012 WL 6799735, *8 (N.D. Cal. Dec. 6, 2012) (finding hourly rates of $198.00 to $220.00 per hour for attorneys and $115.00 to $120.00 per hour for paralegals to be reasonable); *Kickin Enters.*, 2012 WL 6711557, *8 (N.D. Cal. Dec. 20, 2012) (finding hourly rates of $195.00 to $265.00 per hour for attorneys and $115.00 to $120.00 per hour for paralegals to be reasonable). In light of these cases and the declaration and billing records submitted by Minser, the Court concludes that Plaintiffs' requested rates for Minser, Bevington, Hancock, Jellen, and Cotterill are reasonable.

However, based on the Court's review of Plaintiffs' billing records, the Court concludes that Plaintiffs have failed to justify the $30,784.00 in attorney's fees that they seek. Specifically, a very substantial portion of the billed time for which Plaintiffs seek attorney's fees appears to have been performed solely in connection with dismissed defendant Rosie—including billed time related to mediation and settlement with Rosie. Although Plaintiffs allege that Rosie is Defendant's successor, Plaintiffs do not provide any authority to support awarding the fees

15
Case No. 16-CV-02798-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ORDER DENYING WITHOUT PREJUDICE
PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

incurred solely in connection with Rosie against Defendant where Plaintiffs ultimately dismissed Rosie. *See Kickin Enters.*, 2012 WL 6711557, at *9 (recommending that the court deny fees incurred solely in connection with a dismissed defendant Superior DVBE, Inc. because "[a]lthough Defendant Schaller is alleged to be the sole shareholder of Superior DVBE, Inc. . . . Plaintiffs offer no legal justification for awarding fees incurred in connection with [Superior DVBE, Inc.] against Defendants Kickin and Schaller where Plaintiffs ultimately dismissed [Superior DVBE, Inc.]"). As a result, the Court DENIES without prejudice Plaintiffs' request for $30,784.00 in attorney's fees.

Plaintiffs also request costs of $1,304.83. Mot. at 16–17. Plaintiffs have included a bill of costs that provides adequate evidence of these costs. ECF No. 62-1 at 40. However, the bill of costs includes a $90.00 charge for "[s]ervice of process on Rosie the Roofer." *Id.* As discussed above, Plaintiffs "have not offered authority to support their request to impose costs associated with a dismissed defendant on the remaining defendant[]." *Kickin Enters.*, 2012 WL 6711557, at *10. Beyond this $90.00 charge for service of process on Rosie, the Court finds the remaining costs requested by Plaintiffs to be reasonable. Thus, the Court concludes that Plaintiffs are entitled to $1,214.83 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment against Defendant. The Court awards Plaintiffs $2,399,038.00 in unpaid withdrawal liability, $311,644.08 in interest, $479,807.60 in liquidated damages, and $1,214.83 in costs. The Court DENIES without prejudice Plaintiffs' request for $30,784.00 in attorney's fees. Should Plaintiffs elect to file an amended motion curing the fees-related deficiencies identified herein, Plaintiffs shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a denial with prejudice of Plaintiffs' request for attorney's fees.

**IT IS SO ORDERED.**

Dated: December 21, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge